IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CITY OF SUNLAND PARK,

    Plaintiff,

vs.                                             No. CIV 02-0977 RB/KBM

THE BOARD OF COUNTY
COMMISSIONERS OF THE
COUNTY OF DOÑA ANA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. 49), filed on September 11, 2003 and Defendant's Motion for Summary Judgment on its Counterclaims (Doc. 59), filed on October 6, 2003. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1367. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motions are not well-taken and should be denied and that Defendant's Counterclaims 1 through 10 should be dismissed without prejudice.

**I.    Background.**

On August 7, 2002, the City of Sunland Park (Sunland Park) filed a Complaint for Injunction and Declaratory Judgment, alleging claims under 7 U.S.C. §1926(b) and 42 U.S.C. §1983 against Doña Ana County (Doña Ana). Sunland Park alleges that it is a municipal corporation that operates a public utility consisting of a municipal water and wastewater system and the water and wastewater system of Santa Teresa Services Company (STSC). (Pl. Ex. A.) Doña Ana operates a water and wastewater utility that is adjacent to Sunland Park. (Def. Exs. A and C.)

On July 8, 2002, Doña Ana enacted two ordinances establishing water and wastewater service regions, including a border service area. (Def. Ex. A.) The ordinances require that property owners and utility users within the border service area obtain water and wastewater service exclusively from Doña Ana's utility and expressly prohibit users from obtaining water and sewer services from "any other public, private or municipal utility." (*Id.*) All new development and structures within the border service area or existing structures without an existing water and wastewater service must obtain service from Doña Ana. (*Id.*) Sunland Park currently serves customers and has agreements to provide future water and wastewater services to property owners within the border service area. (Pl. Ex. A.)

Sunland Park is currently indebted to the United States Department of Agriculture, Rural Utilities Service (RUS) for improvements to its municipal water and wastewater system as follows:

   a.   City of Sunland Park, New Mexico Water System Improvement Bonds, Series 1992A in the original principal amount of $661,100, of which $607,100 remains outstanding;
   b.   City of Sunland Park, New Mexico Water System Improvement Bonds, Series 1992B in the original principal amount of $177,700, of which $163,700 remains outstanding;
   c.   City of Sunland Park, New Mexico Water System Improvement Revenue Bonds Series, 2002 in the original principal amount of $500,000, all of which remains outstanding.

(Def. Statement of Undisputed Facts ¶ 10; Dep. of Clyde Hudson at 73-76.)

On August 26 1996, Sunland Park filed an action in the Third Judicial District Court for the State of New Mexico seeking to condemn STSC. (Def. Ex. E.) On October 4, 2000, Sunland Park and the Trustee for STSC entered into an agreement regarding condemnation, setting just compensation at $2,000,000, allowing Sunland Park to take possession of STSC on November 24, 2000, and requiring Sunland Park to pay the $2,000,000 by May 24, 2001. (Def. Ex. L.) On January 10, 2001, the state district court awarded Sunland Park the right to condemn STSC. (*Id.*) On March

6, 2001, Doña Ana appealed the condemnation award. (Def. Ex. M.) On March 30, 2001, the state district court directed Sunland Park to deposit the $2,000,000 into the court registry for disbursement in accordance with the condemnation agreement. (Pl. Ex. C.)

On April 3, 2001, Sunland Park applied for a $2,156,000 loan from RUS to acquire STSC. (Def. Ex. D.) On April 18, 2001, RUS issued a conditional letter of approval for the loan. (Def. Ex. I.) Because the conditions could not be met by the May 24, 2001 deadline, Sunland Park procured an interim loan for $2,000,000 from Wells Fargo. (Def. Exs. O and P.) On August 28, 2002, RUS informed Sunland Park that the RUS loan could not be closed until the condemnation appeal was resolved. (Def. Ex. K.) On March 17, 2003, Sunland Park decided to pay off the interim loan with municipal reserve funds to avoid additional interest and renewal fees. (Def. Ex. Q.)

On June 2, 2003, the New Mexico Court of Appeals determined that Doña Ana lacked standing to challenge the condemnation and affirmed the district court's approval of the condemnation. *City of Sunland Park v. Santa Teresa Servs. Co.*, 134 N.M. 243, 75 P.2d 843 (Ct. App. 2003). The New Mexico Supreme Court denied certiorari on August 18, 2003. (Def. Ex. H.) On December 22, 2003, the New Mexico Court of Appeals determined that Sunland Park had met every statutory condition required to gain title to STSC. *City of Sunland Park v. New Mexico Public Regulation Comm'n*, ____ N.M. ____, ___ P.2d ____, 2003 WL 23315467 (Ct. App. Dec. 22, 2003) (*cert. denied* Feb. 17, 2004).

In its Complaint filed herein, Sunland Park asserts that it is entitled to declaratory and injunctive relief to prohibit Doña Ana from infringing or encroaching on its federally protected service area in violation of §1926(b). (Compl. ¶¶ 10-11.) Sunland Park seeks damages and attorney fees for violation of §1926(b) pursuant to 42 U.S.C. §§1983 and 1988, a declaratory judgment, injunctive

relief and imposition of a constructive trust on all of Doña Ana's water facilities within Sunland Park's federally protected service area. (Compl. ¶¶ 13-14; 16-22.)

On September 4, 2002, Doña Ana answered, asserted affirmative defenses and advanced counterclaims. (Doc. 3.) On September 23, 2002, Doña Ana filed its First Amended Counterclaims, seeking a declaratory judgment that (1) RUS regulations render Sunland Park ineligible for RUS funding; (2) Sunland Park's proposed use of RUS funds is prohibited by RUS regulations; (3) Sunland Park's purpose for RUS funds does not fall within the intent of the Rural Development Act; (4) the use of RUS funds to acquire utility infrastructure at the Airport Business Park is prohibited by RUS regulations; (5) the use of RUS funds to serve non-rural areas is prohibited by RUS regulations; (6) Sunland Park has not fulfilled conditions precedent for RUS funding; (7) Sunland Park's use of an interim loan to acquire STSC violated state law and RUS regulations; (8) Sunland Park is ineligible for the loan under the RUS regulations because it does not have authority under state law to expand its municipal utility into the border service area; (9) Sunland Park is ineligible for the loan under the RUS regulations because it lacks authority to provide sewer service within the border service area; (10) Sunland Park is ineligible for the loan under the RUS regulations because it lacks authority to provide water and sewer service outside its municipal boundaries; and (11) Sunland Park cannot impose and enforce its municipal ordinances outside municipal limits. (First Am. Countercl.)

**II.    Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV.

4

P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue

of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000).

**III.     Analysis.**

**A.     Whether Sunland Park satisfies the indebtedness requirement for §1926(b) protection.**

Doña Ana argues that it is entitled to summary judgment because Sunland Park is not eligible for the 2001 RUS loan. These arguments are not relevant to the question of whether Sunland Park satisfies the indebtedness requirement for §1926(b) protection because it is undisputed that Sunland Park is indebted to RUS through the 1992 and 2002 water system improvement revenue bonds.

"Congress authorized the Secretary of Agriculture to make or insure loans to nonprofit water service associations for 'the conservation, development, use, and control of water.'" *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1194 (10th Cir. 1999) (quoting 7 U.S.C. § 1926(a)). Section 1926(b) provides that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body." 7 U.S.C. § 1926(b). Through § 1926(b), Congress intended to protect rural water districts from competition to

encourage rural water development and to provide greater security for and thereby increase the likelihood of repayment of the federal loans. *Sequoyah*, 191 F.3d at 1196. Section 1926(b) is broadly construed to protect rural water districts from competition with other water service providers. *Rural Water Dist. No. 1, Post Rock v. City of Wilson,* 243 F.3d 1263, 1269 (10th Cir. 2001).

In order to obtain §1926(b) protection, Sunland Park must establish that: (1) it is an association; (2) it has a continuing indebtedness to RUS; and (3) it provided or made service available to the disputed area. *Sequoyah*, 191 F.3d at 1197. Doña Ana does not dispute that Sunland Park is indebted to RUS for the water system improvement revenue bonds issued in 1992 and 2002. (Def.'s Undisputed Facts ¶10.) Indeed, Doña Ana argues, in the alternative, that Sunland Park's claims herein are precluded because it could have sought §1926(b) protection in two prior state cases based on the 1992 RUS bonds. (Def.'s Br. at 21-29.)

Without citation to authority, Doña Ana posits that the 1992 and 2002 bonds do not satisfy the indebtedness requirement of §1926(b) because the proceeds were spent to improve Sunland Park's municipal utility, and not to acquire STSC. This position is unsupported. Section 1926(b) does not restrict the scope of protection to the geographic area served by federal loan proceeds that triggered protection. *Bell Arthur Water Corp. v. Greenville Utils. Comm'n*, 173 F.3d 517, 525-26 (4th Cir. 1999). Regardless of the status of the 2001 RUS loan application, the 1992 and 2002 water system improvement revenue bonds qualify as a continuing indebtedness within the meaning of §1926(b). Therefore, Doña Ana's arguments concerning ripeness and Sunland Park's eligibility for the 2001 RUS loan application are not pertinent to the issue of whether Sunland Park satisfies the indebtedness requirement of §1926(b). Doña Ana is not entitled to summary judgment on the

7

indebtedness aspect of Sunland Park's §1926(b) claims.

**B.      Whether Sunland Park has made service available in the border service area.**

In assessing whether a water association has satisfied the "made service available" prong of §1926(b), the Tenth Circuit focuses primarily on whether the association has proximate and adequate "pipes in the ground" with which it has served or can serve the disputed customers within a reasonable time. *Sequoyah County*, 191 F.3d at 1203. "This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." *Id*. In addition to having the capacity to serve, the water association must have the right under state law to serve the area in question. *Sequoyah County*, 191 F.3d at 1202 n. 8.

Doña Ana argues that Sunland Park has not made service available because it has no duty to provide water and wastewater service within the border area. A legal duty to provide service is relevant to the inquiry of whether an association has made service available. *Sequoyah*, 191 F.3d at 1203.  However, in the Tenth Circuit, a legal duty is not required to satisfy the "made service available" element of §1926(b). *Id*.

Doña Ana argues that Sunland Park has no state law right to provide service outside its municipal boundaries because it does not own STSC. In order to invoke the protections of §1926(b), a water association must have the right under state law to serve the area in question. *Sequoyah County*, 191 F.3d at 1202 n. 8. In New Mexico, a municipality owning or operating a municipal utility may furnish water outside municipal limits. NMSA 1978, § 3-27-8. Therefore, Sunland Park has a right under state law to provide water utility service.

The true question is whether Sunland Park has the capacity to provide service within the border area. Doña Ana does not dispute that STSC has provided service within the border service

area. (Def. Mem. Br. at 34.) The New Mexico courts have determined that Sunland Park has taken all statutory steps necessary to obtain title to STSC. *City of Sunland Park v. New Mexico Public Regulation Comm'n*, 2003 WL 23315467. Doña Ana has not discharged its initial summary judgment burden. *See Celotex*, 477 U.S. at 323. Sunland Park has demonstrated a genuine issue for trial on a material matter by submitting evidence that it has contractual commitments to provide water service within the border service area. (Pl. Ex. A.) There are genuine issues of material fact on the question of whether Sunland Park has made service available within the border service area. *Sequoyah County*, 191 F.3d at 1203. Doña Ana's motion for summary judgment should be denied.

**C.    Whether res judicata bars the issue of whether Sunland Park is entitled to §1926(b) protection within the border service area.**

Doña Ana argues that Sunland Park could have asserted §1926(b) protection in two prior related lawsuits; *Doña Ana Co. v. Estate of Phyllis Crowder, Sunland Park, STSC, et al.*, CV 98-1326 (CV-98-1326), and *Sunland Park v. Macias and Doña Ana County*, CV 99-1234 (CV 99-1234), both filed in the Third Judicial District Court of New Mexico.

In CV 98-1326, Doña Ana brought an eminent domain action to condemn Crowder Well No. 5, surrounding property and 200 feet per year of water rights. (Def. Ex. S.) Sunland Park was permitted to intervene because the condemnation of Crowder Well No. 5 could interfere with Sunland Park's ongoing condemnation of STSC and a related water purchase agreement. (Def. Ex. T.) While CV 98-1326 was pending, Doña Ana enacted Ordinance 185-99 authorizing the issuance of $6,000,000 in water and wastewater system gross receipt tax bonds for the purpose of funding a water and utility system for the Border Service Area. (Def. Ex. V.) Sunland Park's application for preliminary injunction to enjoin Ordinance 185-99 was denied. (Def. Ex. W.)

9

In CV 99-1234, Sunland Park sought to enjoin Doña Ana from constructing a water and wastewater utility in the border service area, issuing revenue bonds pursuant to County Ordinance 185-99, or constructing water and wastewater utility infrastructure in the border service area. (Def. Ex. X.) The district court dismissed the case, but the New Mexico Court of Appeals reversed and held that the competing systems clause of County Ordinance 185-99 violated the New Mexico Antitrust Act. *City of Sunland Park, Santa Teresa Services Co., Inc. v. Macias*, 134 N.M. 216, 224, 75 P.3d 816, 824 (Ct. App. 2003).

Federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgment emerged. 28 U.S.C. §1738; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982); *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 709 (10th Cir. 2004). The New Mexico Supreme Court has adopted a "transactional test" to determine whether a later claim is precluded. *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 695, 652 P.2d 240, 245 (1982) (overruled on other grounds by *Universal Life Church v. Coxon*, 105 N.M. 57, 59, 728 P.2d 467, 469 (1986)). The transactional test examines the operative facts underlying the claims made in the two lawsuits. *Anaya v. City of Albuquerque*, 122 N.M. 326, 329, 924 P.2d 735, 738 (Ct. App. 1996) (citing *Three Rivers Land Co.,* 98 N.M. at 695, 652 P.2d at 245). Res judicata bars litigation of claims that were or could have been raised in a prior litigation. *City of Sunland Park*, 134 N.M. at 221, 75 P.3d at 821; *Strickland v. Albuquerque,* 130 F.3d 1408, 1411 (10th Cir. 1997) (citing *State ex rel. Martinez v. Kerr-McGee Corp.*, 120 N.M. 118, 121, 898 P.2d 1256, 1259 (Ct. App. 1995)).

Res judicata consists of four elements: (1) the same parties or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject

matter; and (4) the same cause of action in both suits. *Anaya*, 122 N.M. at 329, 924 P.2d at 738. Res judicata applies when (1) the parties are the same, (2) the cause of action is the same, (3) there was a final decision on the merits in the prior suit. *City of Sunland Park*, 134 N.M. at 221, 75 P.3d at 821. The party seeking to bar the claims has the burden of establishing res judicata. *Bank of Santa Fe v. Marcy Plaza Assoc.*, 131 N.M. 537, 540, 40 P.3d 442, 445 (Ct. App. 2001).

The third and fourth elements of res judicata are not satisfied here because the prior cases involved different subject matter and different causes of action. In CV 98-1326, Sunland Park was permitted to intervene because the condemnation of Crowder Well No. 5 could interfere with Sunland Park's ongoing condemnation of STSC and a related water purchase agreement. In CV 99-1234, Sunland Park sought to enjoin Doña Ana from constructing a water and wastewater utility in the border service area, issuing revenue bonds pursuant to County Ordinance 185-99, and constructing water and wastewater utility infrastructure in the border service area.

In the current case, Sunland Park asserts that Doña Ana infringed on its §1926(b) protected service area by enacting Ordinances 201-02 and 202-02. At the time of the prior litigation, Doña Ana had not adopted Ordinances 201-02 and 202-02 and had not defined the border service area. The facts upon which the instant suit is based did not exist during the time that the prior suits were pending. Doña Ana has failed to meet its burden of establishing the applicability of res judicata. Res judicata is inapplicable because the prior cases involved different operative facts and raised different causes of action.

**D.**    **Whether collateral estoppel bars Sunland Park from asserting that its service area extends outside its municipal boundaries and the STSC service area.**

Doña Ana argues that the service area issue is barred by collateral estoppel because the issue

was actually litigated and necessarily determined in CV 98-1326 and in the case styled *In the Matter of the Petition of Doña Ana County for a Declaratory Order with Respect to the Provision of Water and Wastewater Utility Service to the Port of Entry at Santa Teresa*, and numbered 96-2705, before the New Mexico Public Utility Commission (NMPUC). (Def. Ex. CC.)

Federal courts seeking to determine the preclusive effect of a judgment must look to the preclusion law of the state rendering the judgment. *Reed v. McKune*, 298 F.3d 946, 949 (10th Cir. 2002). Under New Mexico law, the elements of collateral estoppel are: (1) the party to be estopped was a party, or in privity with a party, to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Shovelin v. Central New Mexico Electric Cooperative, Inc.*, 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993). The party invoking the doctrine of collateral estoppel has the initial burden of establishing a prima facie case of collateral estoppel. *Padilla v. Intel Corp.*, 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998).

In CV 98-1326, the state district court denied Sunland Park's challenge to the 1999 revenue ordinance, *City of Sunland Park*, 134 N.M. at 220, 75 P.3d at 820, and later determined that Doña Ana was entitled to condemn Crowder Well No. 5. (Def. Ex. BB.) The state district court's order denying Sunland Park's application for preliminary injunction did not specify the grounds on which it was decided. *City of Sunland Park*, 134 N.M. at 220, 75 P.3d at 820. Indeed, the New Mexico Court of Appeals held that, because it could not determine what issue was actually and necessarily decided in CV 98-1326, collateral estoppel did not apply. *Id*. In Case No. 2705, the NMPUC found, inter alia, that STSC's certificate of public convenience and necessity did not permit it to serve the

12

port of entry or the border area as of November 4, 1996. (Def. Ex. CC.)

In the instant action, Sunland Park alleges that Ordinances 201-02 and 202-02 infringe on its §1926(b) protected service area. The ordinances at issue had not been enacted during the pendency of the prior cases. Thus, the issue of whether they infringe on protected rights under §1926(b) could not have been actually litigated or necessarily decided. Sunland Park was not a party to the NMPUC case. A review of the materials submitted by Doña Ana establishes that the issue of whether Sunland Park made service available within the meaning of §1926(b) was neither addressed in nor decided by the state court or the NMPUC. Because Doña Ana has failed to show that any of the issues in this case were actually decided or necessarily determined in CV 98-1326 or in the NMPUC case, collateral estoppel does not bar Sunland's Park claim in this action.

**E.      Whether the 2001 RUS loan eligibility issues are ripe for review.**

Doña Ana argues that it is entitled to summary judgment on the issue of whether Sunland Park is eligible for the 2001 RUS loan as raised in its Counterclaims 1 through 10. The loan eligibility issues are not ripe for judicial review because RUS has not completed processing the 2001 loan application. (Dep. of Clyde Hudson at 57.)

The ripeness doctrine flows both from the Article III "cases" and "controversies" limitations and also from prudential considerations for refusing to exercise jurisdiction. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993). Its "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). If a claim is not ripe, a federal court has no jurisdiction to consider it. *Coalition for Sustainable Resources, Inc. v. United States Forest Service*, 259 F.3d 1244, 1249 (10th Cir. 2001).

13

When assessing ripeness, a federal court inquires: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Signature Properties Intern. Ltd. Partnership v. Signature Properties Intern. Ltd. Partnership v. City of Edmond*, 310 F.3d 1258, 1265 (10th Cir. 2002). The party asserting the cause of action has the burden of producing evidence to establish that the issues are ripe. *Id*.

The finality of an agency action depends on whether the agency has completed its decision-making process and whether the resulting action has a direct impact on the rights of the parties involved. *HRI, Inc. v. E.P.A.*, 198 F.3d 1224, 1236 (10th Cir. 2000) (agency action is final if it marks the consummation of the agency's decision-making process, and determines rights or obligations of a party). The record indicates that RUS has not completed its decision-making process with respect to Sunland Park's 2001 RUS loan application. Counterclaims Nos. 1 through 10 are not ripe for review because the RUS has not completed the decision-making process on the 2001 application. Therefore, Doña Ana's Counterclaims 1 through 10 should be dismissed without prejudice for want of jurisdiction.

**F.   Whether Sunland Park's attempt to use §1926(b) to acquire new territory is unprecedented and contrary to the intent of Congress.**

Doña Ana argues that Sunland Park may not use §1926(b) as a "sword" to provide service to any unincorporated[1] area that it can physically serve, relying on *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701 (6th Cir. 2003). In *Le-Ax,* the Sixth Circuit examined the text and legislative

---

[1] Although section §1926(b) is intended to encourage rural water development, *Sequoyah*, 191 F.3d at 1196, a municipality may qualify for §1926(b) protection so long as its population does not exceed 10,000 inhabitants. *Lexington-South Elkhorn Water Dist.*, 93 F.3d at 234 (citing 7 U.S.C. § 1926(a)(13) and 7 C.F.R. § 1942.17(b)(1)); 7 C.F.R. § 1942.17(a)(1)(A).

history of § 1926(b) and deduced that the statute's intent was to furnish rural water associations with a defense to encroachment, not an offensive tool to enlarge their service areas. *Id*. at 707. Based on the unique facts presented in that case, the *Le-Ax* court held that, when a rural water district's boundaries are geographically determined by the state, a rural water district cannot use §1926(b) as a sword to force new customers who are outside that geographic area to receive water service through the rural water district. *Id*. at 708.

*Le-Ax* is readily distinguishable from the present situation in at least three material respects. In *Le-Ax*, the disputed area was outside both parties' service areas. *Le-Ax*, 346 F.3d at 708. In this case, portions of the border service area may overlap with Sunland Park's service area. (Def. Ex. 12.) In *Le-Ax*, the geographic boundaries of the water service association were defined by the state. *Le-Ax*, 346 F.3d at 708. In this case, there has been no showing that the boundaries of Sunland Park's water and wastewater system have been set. Third, the water association in *Le-Ax* had never served or contracted to serve property within the disputed area. *Le-Ax*, 346 F.3d at 707. Here, Sunland Park has contracted with entities to provide service within the border service area. (Pl. Ex. A.) Although its reasoning may be persuasive, application of *Le-Ax* would be premature at this stage of factual development.

### IV.    Conclusion.

Material issues of fact remain as to the issue of whether Sunland Park is entitled to §1926(b) protection within the border service area. The relevant issues are not precluded by res judicata or collateral estoppel. Counterclaims 1 through 10 are not ripe and should be dismissed without prejudice for want of jurisdiction.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 49), filed on September 11, 2003, is **DENIED.**

**IT IS FURTHER ORDERED** that Doña Ana's Motion for Summary Judgment on its Counterclaims (Doc. 59), filed on October 6, 2003, is **DENIED.**

*[signature: Robert Brack]*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**